cc: SASP
1 filer

ORIGINAL

Daniel Zhang
524 Keawe St PMB 583
Honolulu, HI 96813-3101
Telephone: (415) 763-7113
Email: dz.case@proton.me
*Pro Se Plaintiff*

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
MAR 10 2026
at 3 o'clock and 06 min. P M
Lucy H. Carrillo, Clerk

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| DANIEL ZHANG,<br><br>*Plaintiff,*<br><br>vs.<br><br>OPTION CARE HEALTH, INC., and<br>OPTION CARE ENTERPRISES, INC.,<br><br>*Defendants.* | CIVIL NO. CV26-00121 SASP RT<br><br>**COMPLAINT FOR DISABILITY DISCRIMINATION AND RETALIATION**<br><br>**JURY TRIAL DEMANDED** |

## I. INTRODUCTION

1. This is an action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

2. Plaintiff was employed by Defendants as a Senior Software Engineer, Mobile Applications.

3. Plaintiff has a chronic medical condition that caused health-related scheduling

limitations, and Plaintiff requested reasonable accommodation for those limitations.

4. On July 21, 2025, Plaintiff received verbal counseling and a negative performance rating.

5. Plaintiff alleges that Defendants subjected Plaintiff to adverse actions motivated by disability and in retaliation for protected activity.

6. Plaintiff later experienced termination of employment, which is included here as background fact only and not as a separate adverse action claim unless and until administrative exhaustion is satisfied.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331.

8. Venue is proper in this district under 28 U.S.C. § 1391(b).

9. A substantial part of the events giving rise to the claims occurred in the District of Hawaii, where Plaintiff resided and performed work for Defendants.

## III. PARTIES

10. Defendant Option Care Health, Inc. is a corporation doing business in this district.

11. Defendant Option Care Enterprises, Inc. is a corporation doing business in this district.

12. Defendant Option Care Enterprises, Inc. extended Plaintiff an offer of employment for the position of Senior Software Engineer, Mobile Applications, with a start date of October 23, 2023.

13. The offer letter referred to Option Care Enterprises, Inc. as "Option Care Health" or the "Company."

14. Defendant Option Care Enterprises, Inc. is identified on Plaintiff's 2025 Form W-2.

15. Plaintiff's Charge of Discrimination filed with the EEOC identified Option Care Health, Inc.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

16. Plaintiff filed a Charge of Discrimination with the EEOC alleging disability discrimination and retaliation.

17. The EEOC Charge identified July 21, 2025 as the adverse-action date.

18. Plaintiff includes the earlier schedule-change and accommodation allegations as background facts underlying the claims presented in the Charge.

19. The EEOC issued a Notice of Right to Sue dated December 12, 2025.

20. This action is filed within ninety days of Plaintiff's receipt of that Notice.

21. Plaintiff brings in this action the claims covered by the EEOC Charge and Notice of Right to Sue described above.

22. Plaintiff later experienced termination of employment.

23. To the extent Plaintiff's later termination of employment constitutes a distinct adverse action requiring separate administrative exhaustion, Plaintiff does not assert a separate claim in this action based on that distinct adverse action unless and until exhaustion is satisfied.

## V. FACTUAL ALLEGATIONS

24. Plaintiff disclosed a disability during the hiring process.

25. Plaintiff worked as a Senior Software Engineer, Mobile Applications.

26. Plaintiff has a chronic medical condition affecting sleep and causes health-related scheduling limitations. Plaintiff's doctor later documented that disruptive and potentially excessive work hours, including required 3:30 a.m. Wednesday meetings, would impair Plaintiff's functioning and degrade Plaintiff's health.

27. Plaintiff was able to perform the essential functions of the position with reasonable accommodation.

28. On January 4, 2024, Plaintiff requested a reasonable accommodation relating to the 3:30 a.m. Wednesday meeting because of health-related scheduling limitations.

29. On January 4, 2024, Alex Slania, Director, responded in writing that Plaintiff was not required to attend that meeting and that Plaintiff would instead provide updates in a separate twice-weekly meeting structure.

30. Plaintiff continued to work Plaintiff's previously established 6:00 a.m. to 2:30 p.m. schedule.

31. Plaintiff relied on that arrangement to manage the health effects of the early Wednesday meeting requirement.

32. On February 22, 2025, Plaintiff sent a written communication to John Prendergast, Vice President, reporting statements by Alex Slania, with Bharath Kumar Burla, Senior Manager, present, expressing concern that the statements threatened termination.

33. On March 4, 2025, Alex Slania, representing that he had discussed the matter with John Prendergast and Human Resources, informed Plaintiff that Plaintiff would no longer continue under the previously approved arrangement that excused Plaintiff from the 3:30 a.m. Wednesday meeting.

34. Plaintiff was instead required to work a 5:00 a.m. through 1:30 p.m. schedule, including 3:30 a.m. starts on Wednesdays.

35. On March 4, 2025, during a meeting about Plaintiff's health-related scheduling limitation and request for medical support, Alex Slania told Plaintiff, in the presence of Bharath Kumar Burla, that "this is all going against your performance" and indicated that the issue had been noted.

36. During the March 4, 2025 meeting, Alex Slania asked Plaintiff whether Plaintiff had a "terminal ailment" that prevented Plaintiff from getting up early.

37. Upon learning of the schedule change, Plaintiff immediately sought medical support and obtained a medical excuse for the next day's 3:30 a.m. start.

38. On March 6, 2025, Plaintiff filed an internal complaint with the Human Resources department alleging retaliation.

39. Plaintiff used PTO on Wednesdays for approximately one month to avoid the 3:30 a.m. meeting requirement.

40. On approximately April 1, 2025, Plaintiff's doctor submitted documentation supporting Plaintiff's accommodation request.

41. Plaintiff offered a 5:30 a.m. start time as a compromise between Plaintiff's previous longstanding 6:00 a.m. start time and Defendants' required 5:00 a.m. start time.

42. On April 10, 2025, Defendants approved Plaintiff to work between 5:30 a.m. and 2:30 p.m. and excused Plaintiff from early Wednesday meetings.

43. Between March 4, 2025 and April 10, 2025, Plaintiff was required to work the imposed schedule before the written accommodation approval issued.

44. After that approval, Plaintiff was required by management to attend a regularly scheduled meeting at 5:30 a.m. Monday through Friday during the remainder of Plaintiff's employment.

45. On July 21, 2025, Plaintiff received verbal counseling and a "Below Expectations" performance rating from Bharath Kumar Burla.

46. Plaintiff had not previously received a "Below Expectations" performance rating.

47. Plaintiff requested written clarification from Bharath Kumar Burla regarding the performance concerns but did not receive documentation explaining the basis for the evaluation.

48. On February 19, 2026, Defendants terminated Plaintiff's employment.

## VI. CLAIMS FOR RELIEF

### COUNT I

### Disability Discrimination and Failure to Accommodate (ADA)

49. Plaintiff realleges paragraphs 1-47.

50. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

51. Defendants knew of Plaintiff's disability and of Plaintiff's health-related scheduling limitations.

52. Plaintiff was able to perform the essential functions of the position with or without reasonable accommodation, and in practice performed the job with schedule-related accommodation.

53. Plaintiff requested reasonable accommodation relating to schedule and attendance at the 3:30 a.m. Wednesday meeting.

54. Defendants previously permitted Plaintiff to work under an arrangement that excused Plaintiff from that meeting while allowing Plaintiff to perform the essential functions of the position.

55. Defendants later required Plaintiff to work an earlier schedule, including 3:30 a.m. starts on Wednesdays, despite Plaintiff's health-related scheduling limitations and request for accommodation.

56. Defendants failed to reasonably accommodate Plaintiff's known disability and health-related scheduling limitations.

57. Defendants' conduct violated 42 U.S.C. § 12112(a), including 42 U.S.C. § 12112(b)(5)(A).

## COUNT II

## Retaliation (ADA)

58. Plaintiff realleges paragraphs 1-47.

59. Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodation for health-related scheduling limitations.

60. Plaintiff also engaged in protected activity by filing an internal Human Resources complaint alleging retaliation.

61. Defendants knew of Plaintiff's protected activity.

62. Shortly after Plaintiff's February 22, 2025 written communication to John Prendergast, Defendants changed Plaintiff's work schedule from Plaintiff's

previously maintained schedule to an earlier schedule that included 3:30 a.m. starts on Wednesdays.

63. During the March 4, 2025 meeting, Defendants linked Plaintiff's scheduling limitation and need for medical support to Plaintiff's performance and indicated that the issue had been noted.

64. Defendants subjected Plaintiff to materially adverse actions after Plaintiff engaged in protected activity, including changing Plaintiff's work schedule and issuing Plaintiff a "Below Expectations" performance rating on July 21, 2025.

65. The close timing between Plaintiff's protected activity and the schedule change, together with Defendants' March 4, 2025 statement linking Plaintiff's scheduling limitation and request for medical support to performance, support a plausible inference of retaliatory motive.

66. Defendants retaliated against Plaintiff because Plaintiff engaged in protected activity.

67. Defendants' conduct violated 42 U.S.C. § 12203.

## VII. DAMAGES

68. Plaintiff seeks in this action damages and relief based on the claims asserted in Counts I and II only and does not seek relief in this action for any distinct termination-based claim unless and until administrative exhaustion is satisfied.

69. Plaintiff has suffered economic loss, benefit-related loss, and emotional distress.

70. Plaintiff seeks lost wages or other economic loss, benefits, including retirement contributions and bonus compensation, compensatory damages, punitive damages, costs, and other relief authorized by law, to the extent recoverable on Counts I and II.

## VIII. PRAYER FOR RELIEF

Plaintiff respectfully requests, on the claims asserted in Counts I and II:

A. Judgment in Plaintiff's favor

B. Lost wages or other economic loss, and benefits, including retirement contributions and bonus compensation, to the extent recoverable on Counts I and II

C. Compensatory and punitive damages

D. Costs

E. Such other relief as the Court deems just

## IX. JURY DEMAND

Plaintiff demands trial by jury.

Date: 3/10/2026

Respectfully submitted,

Daniel Zhang
524 Keawe St PMB 583
Honolulu, HI 96813-3101
Telephone: (415) 763-7113
Email: dz.case@proton.me
*Pro Se Plaintiff*